Hicks *et al. v.* Rhea County *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

384

386

O. W. McKenzie, of Dayton, for appellant.

C. P. Swafford and Walter H. Cheers, of Dayton, for appellee.

Mr. Justice Gailor delivered the opinion of the Court.

The appellants, referred to hereinafter as complainants, filed this action as an Injunction Bill against Rhea County, the County Trustee, and the three members of the Purchasing and Finance Commission, alleging that Chapter 317 of the Private Acts of 1949, by which the Commission was created, was unconstitutional and void. The complainants sued only as property owners and taxpayers, and their rights to make the assault on the Act are limited to their rights as such under well-established rules. *Patton* v. *City of Chattanooga,* 108 Tenn. 197, 65 S. W. 414; *Richardson* v. *Young,* 122 Tenn. 471, 522, 125 S. W. 664; *Donathan et al.* v. *McMinn Co.,* 187 Tenn. 220, 227, 213 S. W. 2d 173.

██ "No one has the right to attack a particular provision in a statute as unconstitutional unless it affects him adversely. This court has said, when an Act is void under the one-subject clause of the Constitution, 'anyone against whom such an act is sought to be enforced may attack it on that ground, and if successful he will be relieved of whatever burden the statute in any of its parts seems to impose on him.' *State* v. *Cumberland Club,* 136 Tenn. 84, 101, 188 S. W. 583, 587." *Cheatham County* v. *Murff,* 176 Tenn. 93, 105, 138 S. W. 2d 430, 434.

The defendants met the bill with a demurrer coupled with an answer. The complainants made a motion to dismiss the demurrer, alleging that by filing the answer the defendants had waived their rights to rely on the grounds of their demurrer. The Chancellor, after writing and

filing a lucid and well-considered opinion which has come up with the record, overruled the first ground of the demurrer, which was a denial of the right of the complainants to file the bill, sustained all other grounds of the demurrer and dismissed the bill. Limiting their exception to the action of the Chancellor in sustaining the demurrer, the complainants have perfected their appeal.

■ The first assignment of error is to the action of the Chancellor in overruling the motion of complainants to dismiss the demurrer. The record shows no timely objection by complainants to the action of the Chancellor in overruling the motion, and their right to review was thereby waived. The action of the Chancellor is not properly before us for review. Rule 14(5), 185 Tenn. 868. When no exception was taken and preserved from the Chancellor's ruling, his action became the law of the case. *Tennessee Eastern Elec. Co.* v. *Hannah*, 157 Tenn. 582, 12 S. W. 2d 372. The assignment is accordingly overruled.

■ By the second, third and fifteenth assignments of error complainants assert that the Chancellor erred in not holding the Act invalid as violating Art. II, Section 17, of the Constitution. All of these assignments are bad and fail to comply with Rule 14 (2), 185 Tenn. 867. The assignments make no specification of how the rights of the complainants, as citizens and taxpayers, are prejudiced and give no reference to the pages of the record where the ruling of the court complained of, is contained. They undertake to combine assignments of error with brief of authorities and argument, all which make it impossible for us to consider them seriatim. Apparently, the substance of the assignments is that (1) the Act is broader than its caption, and (2) that it contains two subjects.

The caption of the Act is as follows:

"An Act to reorganize the fiscal affairs of Rhea County by granting to the County Court certain powers therewith, by creating a Finance and Purchasing Commission, a Budget Committee, a Highway Supervisory Committee, and prescribing the powers, duty and authority of each and by repealing the existing budget law for said county and prescribing penalties for the violation of this Act."

So the broad purpose of the Act is stated to be, "To reorganize the fiscal affairs of Rhea County". The word "fiscal" used here as an adjective, is synonymous with "financial," and is here correctly used to imply further public, as distinguished from private finances and revenues. The succeeding clauses and phrases of the caption, after the expresssion of its general purpose,— "By granting to the County Courts certain powers, etc." though elaborating and explaining that general purpose, do not limit or restrict it. *Hanyes* v. *Sanford et al.,* 185 Tenn. 576, 206 S. W. 2d 796. So long as the body of the Act does not contain two or more subjects of legislation antagonistic and repugnant, and so long as the body of the Act does not contain some hidden incongruity not germane to the purpose stated in the caption, the constitutional provision is not violated. Cooley, Constitutional Limitations, 8th Ed., Vol. 1, p. 291 et seq. In a great many Tennessee cases, this interpretation and construction of Art. 11, Section 17, of the Constitution has been approved since the decision of *Cannon* v. *Mathes,* decided two years after the Constitution of 1870 was approved. The case is reported in 55 Tenn. 504, and Nicholson, C. J., stated the rule for construing Art. II, Section 17, which has ever since been followed:

"It is obvious, therefore, that the true rule of the construction, as fully established by the authorities, is, that any provision of the act, directly or indirectly relating to the subject expressed in the title, and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it." *Cannon* v. *Mathes*, 55 Tenn. 504, 523.

■ In the assignments attacking the caption, the complainants devote much argument to the idea that whereas the purpose of the Act is expressed to be the creation of a commission, that in the body of the Act, administrative functions are imposed directly upon the County Court. Not only are these administrative powers given to the County Court, "congruous" and "germane" to the phrase in the caption,—"By granting to the County Court certain powers", but a hair-line distinction between "political" and "administrative" power has never been possible in our system of government. *House* v. *Creveling*, 147 Tenn. 589, 597, 250 S. W. 357.

A careful study of the Act, which contains 12 sections, and is much too long to copy at length in this opinion, convinces us that there is nothing in the body of the Act which is not congruous and germane to the stated purpose of the caption which was to reorganize the fiscal affairs (financial administration) of Rhea County. Accordingly, assignments two, three and fifteen are overruled.

■ The defendants conceded that that part of Section 2 of the Act in which the individual defendants, Abel, Hinch and Arnold, were appointed as the first members of the Purchasing and Finance Commission, was unconstitutional and in violation of Art. 11, Section 17. The Chancellor so held, but he held further that in view of the

very explicit and complete "saving and rescue" clause in the Act, that that part of Section 2, by which the individuals were appointed, could be and should be elided; that after that elision there was full and detailed direction for the election of Commissioners by the County Court and that the Act was complete and effective without the detail of invalidity. By assignments of error four and fourteen, the complainants insist that this holding of the Chancellor was erroneous.

With the objectionable portion elided. Section 2 of the Act provides, that there is created for Rhea County a Purchasing and Finance Commission; that the Commission shall be composed of three members at least 30 years of age, five years residence in the county, and five years general business experience; the members of the Commission shall be elected by the County Court, that their terms of office shall be so staggered that one member of the Commission shall be elected each year for a maximum term of three years, that each memeber shall take an oath to faithfully perform his duties and serve the public interest and file said oath with the County Court; that vacancies occurring in membership of the Commission shall be filled at the next meeting of the County Court and that the County Court shall make the election to commence the next August 31, at each July term, for that member who is regularly elected annually. That the compensation of the members of the Commission will be paid by the County Court out of the general funds of the County in an amount not to exceed $300 per year for each member. Clearly, therefore, the Act could be elided as directed by the Chancellor, without impairing its completeness nor affecting the purpose for which it was passed by the Legislature.

To support these assignments the complainants cite the case of *Cheatham County* v. *Murff*, 176 Tenn. 93, 138 S. W. 2d 430. It is difficult for us to see the purpose of that citation, since that authority fully supports the action of the Chancellor:

"The fifth assignment of error is directed to a provision of the Act which Chancellor held bad and elided. There was no appeal from the action of the Chancellor and we think that he was obviously correct. The particular provision was easily severable. By this provision an individual named was designated to hold the office of road supervisor from the passage of the Act until September 1, 1940." *Cheatham County* v. *Murff*, 176 Tenn. 93, 105-106, 138 S. W. 2d 430, 434.

After thus affirming the Chancellor's holding that the section of the Act making the *ad interim* appointment, was severable, the private highway Act under consideration in *Cheatham County* v. *Murff*, *supra*, was held constitutional. As noted by the Chancellor, we had for consideration, a private Act with a similar provision in the case of *Kyle* v. *Marcom*, 181 Tenn. 57, 178 S. W. 2d 618, and there held that the provision making the *ad interim* appointment in violation of Art. 11, Section 17, of the Constitution, was severable and could be elided:

"Under the circumstances, we agree with the Chancellor that the naming of these defendants to an *ad interim* appointment on the new Commission is objectionable and we think the Act invalid to that extent. However, if it is possible to elide this objectionable section of the Act, which contains in Section 10 an all-inclusive 'rescue or saving clause,' it is our duty in giving full effect to the authority of the Legislature, to make the elision and not invalidate the entire Act. *Gates* v. *Long*, [172 Tenn. 471,

113 S. W. 2d 388], *supra.* This is our duty, if such elision may be made without affecting the plain purpose of the legislature and if the elision does not render that part of the Act which is left, unintelligible and incomplete. Such was the course pursued by this court in invalidating an objectionable *ad interim* appointment in the case of *Cheatham County* v. *Murff,* 176 Tenn. 93, 105, 138 S. W. 2d 430." *Kyle et al.* v. *Marcom,* 181 Tenn. 57, 70-71, 178 S. W. 2d 618, 623.

The fourth and fourteenth assignments of error are overruled.

By assignments five and thirteen it is insisted that the Act violates Constitution Art. 11, Section 8, by suspending the general school law in Rhea County, and by assignments six through ten, it is insisted that the same constitutional section is violated in that the duties, functions and rights of various county officers are changed by the Act, so that, in effect, a special form of county government is created in Rhea County.

No single one of these assignments comply with Rule 14, subsections (2) and (5), 185 Tenn. 867, 868, in that they fail to specify what clause of Section 8 of Art. 11, is violated; in that they fail to specify wherein or whereby these complainants are prejudiced or adversely affected by the assailed provisions of the Act.

Admitting the substance of the assignments and that a special form of county government is set up by the Act, clearly, this is permissible under the authorities which are numerous, and which assert the rule that so long as a special Act of the Legislature affects the county only in the performance of its governmental function, that is, in the form, machinery and instrumentalities of governmental operation and control, the Act is

not objectionable under Section 8 of Art. 11, of the Constitution. The Act under review here is much less comprehensive and revolutionary in its changes than that which we upheld in *Donathan et al.* v. *McMinn Co.*, 187 Tenn. 220, 213 S. W. 2d 173. The Chancellor, in his very comprehensive opinion, compared this Act with similar Acts recently passed for Polk County, which we upheld in *Crewse et al.* v. *Beeler, Atty. Gen.*, 186 Tenn. 475, 212 S. W. 2d 39, and for Knox County, which was upheld in an opinion published in *Troutman* v. *Crippen*, 186 Tenn. at page 459 et seq., 212 S. W. 2d 33. The Chancellor found that the present Act, in many of its provisions, was identical with those private Acts passed for Knox and Polk counties, and heretofore upheld by the Court.

The complainants here are in the same position as were the complainants in the *Donathan case, supra,* and here, as there, the Court, in overruling the foregoing assignments, must reserve the right in future litigation, to restrain and limit action of the Committees and Commissions created by the present Act, if and when a case is presented by one whose rights have been adversely affected. For example, the Chancellor found, and we agree with that finding, that under the present Act, the Finance and Purchasing Commission thereby created, has for its function with regard to the Board of Education or School Board, no function other than to act as a purchasing commission. It has no right to receive or expend public money. It has only the right to approve and supervise. The performance of such a function is not an encroachment on general law, but is expressly in conformity with subsection (6) of Section 2325 of the Code, where it is provided, "that this shall not apply

where counties have county boards of education, *purchasing boards* or committees.'' If in the future, the members of the school board, or others adversely affected, should assert and prove that the Finance and Purchasing Commission had gone beyond their function, and undertaken to interfere or encroach upon the functions of the school board, we should then have a question and a cause of action which is not before us at the present time . The proposition is best illustrated by the different result reached in the case of *Crewse* v. *Beeler, supra,* and that in *State ex rel. Biggs* v. *Barclay,* Tenn. Sup., 216 S. W. 2d 711. In the first case, the Polk County Act was upheld against the attack of certain citizens and taxpayers, but in the case of *State ex rel. Biggs* v. *Barclay, supra,* on the suit of the Sheriff and the allegation that an illegal auditing provision had been imposed upon him as Sheriff, by the newly created commissioners, this Court held that the imposition of that additional auditing provision was a usurpation and invalid.

The invalidity of the Act is next asserted because of the fact that it does not require (1) that the Commissions created should give surety bonds, and (2) that it does not require that the members of the Commission take the oath of office required by Constitution Art. 10, Section 1. As to the first, there is no assertion that there is any constitutional requirement that a public officer should make bond. Such bonds are referred to as ''statutory'' and their requirement and conditions are purely in the discretion of the Legislature, and as to the oath, in the absence of opposite showing, this Court will presume that the oath required by Constitution Art. 10, Section 1, was taken by every public officer. It is, of course, not necessary that every consti-

tutional requirement be specified in every private Act. *So. Ry. Co.* v. *Claiborne Co.*, 157 Tenn. 71, 291 S. W. 837; *Stiner* v. *Powells Valley Hardware Co.*, 168 Tenn. 99, 75 S. W. 2d 406.

After it was conceded that the appointment of the defendant Commissioners by the Act, was invalid, the County Court elected these defendants in accordance with the provisions of the Act. By assignment twelve, the complainants undertake to assail the regularity of this election. The original bill in this cause was filed on June 14, 1949, and the election by the County Court occurred at some unspecified meeting of its July term. Both the time element and the frame and form of the various bills and supplemental bills in this cause placed the regularity of the election outside the scope of the present action . The Chancellor so held and we agree with that holding, which was as follows:

"The Court is of opinion that its authority here is confined to an adjudication upon the constitutionality of the act in question; and that the regularity of the County Court's actions in electing the commission at the July term is not a question for determination here. The Court is also of opinion that the actions of the County Court as evidenced by the resolution, exhibit to the supplemental bill, was consistent with the general school laws and not the result of any power or authority of the act here in question."

For the reasons stated, and under the authorities cited, the assignments of error are overruled and the Chancellor's decree is affirmed. All concur.