IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 21, 2003 Session

## JOHN WAYNE GOODMAN v. CITY OF SAVANNAH and SAVANNAH BOARD OF COMMISSIONERS

Appeal from the Chancery Court for Hardin County
No. 5999     Ron E. Harmon, Chancellor

No. W2002-02898-COA-R3-CV - Filed November 5, 2003

This is an age discrimination case involving a mandatory retirement policy. A firefighter employed by the defendant municipality was forced to retire at age sixty-two pursuant to the municipality's mandatory retirement policy. The firefighter then filed this lawsuit against the municipality, asserting that the mandatory retirement policy violates the Tennessee Human Rights Act by discriminating against him based on his age. The trial court granted summary judgment in favor of the municipality. The firefighter appeals. We affirm, finding that Tennessee Code Annotated section 8-36-205 authorizes the municipality to adopt a mandatory retirement policy without being required to establish age as a bona fide occupational qualification.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

David M. Sullivan, Memphis, Tennessee, for appellant, John Wayne Goodman.

John C. Duffy, Knoxville, Tennessee, and James A. Hopper, Savannah, Tennessee, for appellees, City of Savannah and Savannah Board of Commissioners.

## OPINION

John Wayne Goodman ("Goodman") became employed as a firefighter with the City of Savannah ("Savannah") fire department in July 1979. He ultimately attained the rank of captain. In 1999, the Savannah Board of Commissioners ("Board") elected to establish a mandatory retirement age of sixty-two for firefighters and police officers employed by the City of Savannah.[1] In 2001, Goodman reached age sixty-two. As a result, pursuant to the mandatory retirement policy, on December 31, 2001, Goodman was forced to retire.

---

[1]Unless otherwise noted, Savannah and Board shall be referred to collectively as Savannah.

Goodman then filed this lawsuit against Savannah, alleging that his forced retirement constituted age discrimination in violation of the Tennessee Human Rights Act. He sought reinstatement, backpay and accrued benefits, compensatory damages, attorney's fees, and an injunction prohibiting harassment and retaliation against him by Savannah's agents, officers, and employees. Savannah's answer to Goodman's complaint asserted that it had not violated the Human Rights Act, because it was authorized to adopt a mandatory retirement policy under section 8-36-205 of the Tennessee Code Annotated.

The parties filed cross motions for summary judgment. Goodman argued that, as Savannah admitted to mandating Goodman's retirement solely on the basis of his age, Savannah had violated section 4-21-401 of the Tennessee Human Rights Act, which forbids discrimination on the basis of age. He argued that, in order to set a mandatory retirement age, Savannah was required to show age to be a bona fide occupational qualification (BFOQ) under the Tennessee Human Rights Act, which had not been done.[2]

In its cross motion for summary judgment, Savannah noted that its mandatory retirement policy was adopted pursuant to Tennessee Code Annotated section 8-36-205(a)(2), which states as follows:

> Any political subdivision participating in the retirement system may establish a mandatory retirement age requirement for all its firefighters . . . provided that:
>
> > (A) The terms and conditions of the requirement shall be the same for all such employees within its employ;
> > (B) The mandatory age requirement shall not be less than sixty (60) years of age . . . .

Tenn. Code Ann. § 8-36-205(a)(2) (2002). Thus, Savannah argued, section 8-36-205 expressly allows municipalities to set a mandatory retirement age for firefighters and police officers. Since the mandatory retirement statute was adopted after the Tennessee Human Rights Act, Savannah maintained, it was an exception to the Human Rights Act. In the alternative, Savannah argued that age is a BFOQ for firefighters.

In support of its motion, Savannah filed the affidavit of Ray Crouch ("Crouch"), the Fire Department Management Consultant with the University of Tennessee Municipal Technical Advisory Service. Crouch advises fire departments on their management policies. In his affidavit,

---

[2]Goodman also contended that Savannah could not use Tennessee Code Annotated section 4-21-407(e)(1)(A) to avoid the mandates of the Tennessee Human Rights Act. Section 4-21-407(e)(1)(A) allows employers to hire or discharge individuals due to age if the "individual [is] a firefighter or a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable state or local law on March 3, 1983." Tenn. Code Ann. § 4-21-407(e)(1)(A) (1998). Goodman asserted that there was no such retirement age set out by state or local law for Savannah firefighters at that date. However, this appears to have been a disputed fact, because in its own motion for summary judgment, Savannah argued that there was in fact such a state law in effect at that time.

Crouch stated that he recommends fire departments to set a mandatory retirement age, due to the high risk of fatalities and injuries to firefighters who are age sixty-five.[3] Crouch stated that he advised Savannah to set a mandatory retirement age of sixty-two for its firefighters.[4] Goodman filed a motion to strike the affidavit on grounds, in part, that Crouch was not qualified to testify as to whether Savannah could state a BFOQ for the fire captain position.[5] The trial court denied the motion to strike.

The trial court initially denied both parties' motions, holding that the Human Rights Act "trumps" the mandatory retirement statute relied upon by Savannah and that a material issue of fact remained as to whether the age set by Savannah constituted a BFOQ under the Act. On the day of the trial, however, the trial court altered this holding, determining that, under the proper interpretation of the two statutes, Savannah did not violate the Tennessee Human Rights Act by setting the mandatory retirement age at sixty-two. Consequently, the trial court granted Savannah's motion for summary judgment. From that order, Goodman appeals.

Goodman raises three issues on appeal. First, he argues that application of the mandatory retirement statute to him constitutes an impermissible retroactive taking of his right to work. Second, he asserts that, in light of the Tennessee Human Rights Act, the mandatory retirement statute does not give municipalities permission to set a mandatory retirement age for police officers and firefighters absent a BFOQ. Third, he argues that the trial court erred in failing to strike the Crouch affidavit from the record.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). Moreover, the interpretation of statutes and their application to particular facts are legal questions, reviewed de novo with no presumption of correctness. Williams v. Kellogg Co., 48 S.W.3d 148, 151 (Tenn. 2001); State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle, 63 S.W.3d 734, 754 (Tenn. Ct. App. 2001). Therefore, our review of the trial court's grant of summary judgment is de novo with no presumption of correctness. Warren v. Estate of Kirk, 954 S.W.2d 722, 723 (Tenn. 1997).

---

[3]Crouch stated in the affidavit that in making this recommendation, he relies upon a memorandum from the Tennessee Consolidated Retirement System and an Opinion of the Office of the Attorney General, both of which attest to the legality of setting a mandatory retirement age for firefighters under the mandatory retirement act.

[4]He recommended that cities set the age at sixty-two because employees could begin drawing Social Security at that age, thus relieving cities from making bridge payments as would otherwise be required.

[5]Goodman also maintained that the affidavit failed to establish a BFOQ for the fire captain position and contained inadmissable hearsay.

We consider first Goodman's argument that Savannah's application of section 8-36-205, the mandatory retirement statute, violates the Tennessee Human Rights Act's proscription against age discrimination. He asserts that construing the statutes together in a way that would permit Savannah to set a mandatory age absent a BFOQ would result in an implied repeal of the Tennessee Human Rights Act, thus violating rules of statutory construction. Goodman contends that the only proper construction, which would allow both statutes to exist without conflict, would be one that requires a municipality to show a BFOQ before setting a mandatory retirement age. Goodman maintains that the purpose of the mandatory retirement statute could not have been to relieve municipalities of the obligation to show a BFOQ, but rather to prevent municipalities from applying a BFOQ that could force the retirement of firefighters and police officers younger than age sixty. He contends that the mandatory retirement statute is intended only to provide the procedures for a municipality to follow should it wish to establish a mandatory retirement policy. Goodman asserts that, had the general assembly intended to exclude municipalities from the requirements of the Tennessee Human Rights Act, it would have explicitly stated this.

Thus, in this appeal, we must construe the mandatory retirement statute, section 8-36-205, as well as the Tennessee Human Rights Act, section 4-21-401. In construing these two statutes, we must "ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. State Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). We give effect to the legislative intent " 'primarily from the natural and ordinary meaning of the language used.' " *State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948, 951 (Tenn. 1998) (quoting *Worrell v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1997)). Statutes concerning the same subject are "construed together ('in pari materia') 'in order to advance their common purpose or intent.' " *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 716 (Tenn. 2002) (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)). The statutes should be construed in a reasonable manner " 'which avoids statutory conflict and provides for harmonious operation of the laws.' " *Id.* (quoting *Carver*, 954 S.W.2d at 35). We presume that the legislature, in enacting legislation, knows of prior statutes and the state of the law. *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995). In construing together a statute of general application and a more specific statute, the more specific statute will control. *Washington v. Robertson County*, 29 S.W.3d 466, 475 (Tenn. 2000).

The Tennessee Human Rights Act, section 4-21-401 of the Tennessee Code Annotated, provides: "It is a discriminatory practice for an employer to . . . [f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . ." Tenn. Code Ann. § 4-21-401 (1998). The Act provides, however, that an employer may make employment decision on the basis of age if age is a BFOQ:

Age discrimination. - (a) It is not unlawful for an employer . . . to:

(1) Discriminate in employment on the basis of age where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . .

Tenn. Code Ann. § 4-21-407 (1998). The parties in this case do not dispute that Savannah would be permitted to establish age sixty-two as a mandatory retirement age if it proved age to be a BFOQ

for a firefighter such as Goodman. The threshold issue, then, is whether Savannah is required to prove that age is a BFOQ.

The Tennessee mandatory retirement statute references the federal counterpart to the Tennessee Human Rights Act provision which prohibits age discrimination:

> (a) There shall not be a mandatory age requirement for any member of the Tennessee consolidated retirement system, except for the following:
>
> . . . .
>
> (2) A mandatory age requirement shall also apply for members who are employed as firefighters . . . provided the political subdivision has adopted a mandatory retirement age requirement pursuant to this subdivision (a)(2), and provided that the mandatory retirement of any such member does not violate the Age Discrimination in Employment Act. . . . Any political subdivision participating in the retirement system may establish a mandatory retirement age requirement for all its firefighters . . . provided that:
>
> > (A) The terms and conditions of the requirement shall be the same for all such employees within its employ;
> > (B) The mandatory age requirement shall not be less than sixty (60) years of age . . . .

Tenn. Code Ann. § 8-36-205(a)(2) (2002). Thus, the statute specifically provides that a municipality may adopt a mandatory retirement age, not less than sixty years old, for firefighters. Since the Tennessee legislature cannot, of course, carve out an exception to the federal statute prohibiting age discrimination, the statute includes the proviso that the mandatory age requirement not violate the federal act. No such reference is made to the prohibition against age discrimination in the Tennessee Human Rights Act.

Goodman argues that, nevertheless, a municipality such as Savannah is required to prove that age is a BFOQ in order to adopt a mandatory retirement age of sixty or more for firefighters. This interpretation renders the Tennessee mandatory retirement statute meaningless and superfluous, since it is undisputed that Savannah already had the right to adopt a mandatory retirement age if it showed that age was a BFOQ. We cannot adopt an interpretation that renders the statute meaningless. In construing together the Tennessee Human Rights Act and the mandatory retirement statute, we "must presume that the legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws." *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997). Goodman argues that the statute is really intended to prevent a municipality from mandating the retirement of firefighters younger than sixty, or to outline the procedures to establish a mandatory retirement policy once a BFOQ is proven. The language of the statute, however, does not support this interpretation. Clearly the legislature intended to create an express

-5-

exception to the Tennessee statute prohibiting age discrimination, to permit a municipality to adopt a mandatory age requirement for firefighters without having to show a BFOQ.

Goodman also argues that application of the mandatory retirement statute to him would constitute an unconstitutional retroactive taking of his right to work. Goodman, however, failed to raise this issue to the trial court. Therefore, the argument has been waived. *See* Tenn. R. App. P. 36(a); *In re Adoption of D.P.M.*, 90 S.W.3d 263, 266 (Tenn. Ct. App. 2002).

Goodman's third argument is that Crouch's affidavit should not have been considered by the trial court because he was not qualified to testify as to whether Savannah had a valid BFOQ. Because we have found that the Tennessee mandatory retirement statute permits Savannah to adopt a mandatory retirement age without proving that age is a BFOQ, this issue is pretermitted. Thus, we conclude that the trial court did not err in granting Savannah's motion for summary judgment.

The decision of the trial court is affirmed. Costs are taxed to Appellant, John Wayne Goodman, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE